UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NATHANIEL WATT,

                   Plaintiff,

   -against-

THE CITY OF NEW YORK, NEW YORK CITY
POLICE OFFICERS: PATRICK GOURLAY, JOHN
REDHEAD, NEW YORK CITY DEPARTMENT OF
CORRECTION: COMMISSIONER
COMMISSIONER LYNELLE MAGINLEY-LIDDIE
AND OFFICER KEVIN BLACKETT, ALL
DEFENDANTS IN THEIR INDIVIDUAL AND
OFFICIAL CAPACITIES AS EMPLOYEES OF THE
CITY OF NEW YORK,

                   Defendants.

Case No.: 22-civ-6841(AMD)(JAM)

**Oral Argument Requested**

<u>MEMORANDUM OF LAW IN SUPPORT OF</u>
<u>DEFENDANT KEVIN BLACKETT'S MOTION FOR SUMMARY JUDGMENT</u>
<u>PURSUANT TO FED. R. CIV. P. 56</u>

**Karasyk & Moschella, LLP**
***Attorneys for Defendant Kevin Blackett***
**233 Broadway, Suite 2340**
**New York, New York 10279**
**(212) 233-3800**

*Of Counsel:*   John W. Burns, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................ii

PRELIMINARY STATEMENT..........................................................................................1

STATEMENT OF FACTS................................................................................................2

PROCEDURAL HISTORY..............................................................................................12

STANDARD OF REVIEW...............................................................................................13

ARGUMENT.....................................................................................................................14

          POINT I:    Blackett Was Not Acting Under The Color Of Law
                      All Of Plaintiff's Constitutional, And Federal Law
                      Claims Against Blackett Must Be Dismissed.........................................14

          POINT II:    As The Discharge Of Blackett's Weapon Was Not
                      An Intentional Act, Plaintiff § 1983 Claims
                      Must Fail...................................................................................................19

          POINT III:    There Are No Genuine, Material Facts To Support
                      Plaintiff's Claim That Defendant Blackett
                      Conspired To Deprive Plaintiff Of His
                      Constitutional Rights..............................................................................21

          POINT IV:    The Court Should Decline To Exercise Pendent
                      Jurisdiction Over The Remaining State Law Claims..........................24

CONCLUSION..................................................................................................................25

## **TABLE OF AUTHORITIES**

**Cases:**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)...........................................................13

*Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).....................................................................15

*Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994)...................................................15

*Barnes v. Harling*, 368 F.Supp.3d 573 (W.D.N.Y 2019)............................................................22

*Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983)....................................................15, 19

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)..................15

*Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)...................................................................13

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)........................................................24

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)...............................................................13, 14

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).........................................................15

*Claudio v. Sawyer*, 675 F. Supp. 2d 403 (S.D.N.Y. 2009).........................................................16

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)...................................................................13

*Cooper v. City of New York, et al.*, 2024 U.S. App. Lexis 6116 (2nd Cir. 2024)........................23

*Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981)...................21

*Cotz v. Mastoreni*, 476 F. Supp. 2d 332, 372 (S.D.N.Y. 2007).....................................................16

*Daniels v. Williams*, 474 U.S. 327, 331 (1985)..........................................................................20

*Dodd v. Norwich*, 827 F. 2d 1, 8 (2nd Cir. 1987).......................................................................20

*Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 251 (2d Cir. 1985)............................21

*Evans v. U.S.*, 504 U.S. 255, 274 (1992).....................................................................................15

*Fiske v. Letterman*, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005)..................................................15

*Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995)...............14

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980)...................................................................15

*Gustafson v. Village of Fairport*, 106 F.Supp.3d 340, 352 (W.D.N.Y. 2015)...............22

*Hearst v. City of New York*, 2012 LEXIS 41125 (E.D.N.Y. 2012)................................17

*Houston v. Zen Zen*, 388 F.Supp.2d 172, 175 (W.D.N.Y. 2005)..................................24

*Jocks v. Tavernier*, 316 F.3d 134 (2d Cir. 2008)...........................................................16

*Nisbett v. State of New York*, 31 Misc. 3d 32, 222 (1961)..............................................17

*Ostensen v. Suffolk County*, 236 Fed.Appx. 651, 653 (2d Cir. 2007)............................24

*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).........................................21, 22

*Pitchell v. Callan*, 13 F.3d 545, 547-48 (2d Cir. 1994)...........................................16, 24

*Screws v. United States*, 325 U.S. 91, 107-113 (1944)............................................15, 16

*Stoeckley v. City of New York*, 700 F. Supp. 2d 493 (S.D.N.Y. 2010).....................16, 17

*Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992)..................13

*United States v. Classic*, 313 U.S. 299, 326 (1941).......................................................15

*United States v. Temple*, 447 F.3d 130, 138 (2d Cir. 2006)..........................................15

*Wahhab v. City of New York*, 386 F. Supp. 2d 277, 278 (2005)....................................16

**Statutes**

42 U.S.C. § 1983..............................................................................................*passim*

New York State General Municipal Law § 50-h..................................................*passim*

## PRELIMINARY STATEMENT

Defendant Kevin Blackett ("Blackett"), brings this motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of Plaintiff's claims asserted against him under 42 U.S.C. § 1983. The uncontested facts show that, at all relevant times, Blackett was not acting under the color of law, a prerequisite for liability under 42 U.S.C. § 1983. Plaintiff Nathaniel Watt ("Watt") has made false and legally baseless assertions that Blackett, along with other defendants, conspired to violate his Fourth and Fourteenth Amendment constitutional rights that included allegations as to false arrest and illegal imprisonment, excessive force, malicious prosecution, and conspiracy.

Plaintiff has failed to adduce any genuine evidence to support his assertion that Blackett intentionally discharged his Personal Protective Firearm ("PPF"). Blackett was and continues to be employed as a New York City Correction Officer and was, at the time, legally authorized to carry a firearm. It is uncontested that Blackett's 9mm Glock pistol accidentally discharged one round during the attempt by Plaintiff to take the pistol away from Blackett. The failure by Plaintiff to show that his injuries, while *de minimis* in nature, were caused by an intentional act is another failure to prove of an essential element to maintain a claim pursuant to 42 U.S.C. § 1983.

It is uncontested that Blackett, although employed as a New York City Correction Officer, never acted in his capacity as a law enforcement officer or acted as an arresting officer during this interaction with Plaintiff. Rather, Blackett was a victim of a crime. Plaintiff was trespassing in a home owned by Blackett. Additionally, Blackett was never involved with the decision to arrest and criminally charge Plaintiff, nor was Blackett ever part of any conspiracy to racially profile or to fabricate a version of events that would justify Plaintiff's false arrest and violate his constitutional rights. The decision to arrest and charge Plaintiff was based on probable cause and

1

a decision that was made by the on-duty New York City Police Department Lieutenant ("Lt.") Hussain, who was the senior ranking NYPD Officer at the scene and led the investigation into the events in question.

Upon the dismissal of Plaintiff's § 1983 claims, Blackett also moves for this Court to decline to exercise supplemental jurisdiction over the state law claims.

## STATEMENT OF FACTS[1]

Introduction:

This matter is before the Court because Plaintiff Nathaniel Watt ("Plaintiff" or "Watt") attempted to enter a locked basement level apartment in a home owned by Defendant Kevin Blackett ("Defendant" or "Blackett"). However, Plaintiff Watt was not aware that Defendant Blackett was behind the locked door of the apartment, along with his now wife Shanee Roberts-Blackett ("Shanee"). Defendant Blackett, a New York City Correction Officer, in fear for his and his wife's life and safety, unholstered his Glock 9mm as he approached the apartment door that Plaintiff was banging upon and attempting to open. Defendant Blackett opened the locked door to confront the unknown person who was, attempting to break down the door. Defendant Blackett stepped into the small area outside the door, where Plaintiff, the individual attempting to enter the apartment, grabbed the Glock 9mm pistol Blackett was holding in his hand and tried to take

---

[1] Unless otherwise stated, the following facts are taken from the defendant Blackett's Rule 56.1 Statement pursuant to Local Rule 56.1. previously submitted on ECF Dkt 58, on September 11, 2024. The Exhibits which are the source of Defendant Blackett's evidence in support of his herein motion and submitted simultaneously herewith are as follows: Declaration of Defendant Kevin Blackett (Exhibit "A"); NYPD Police Officer ("PO") Morris Body Worn Camera ("BWC") Footage Bate Stamp DEF0210 (Exhibit "B"); Photo of Heater/Boiler outside Basement Apartment, Bate Stamp DEF0221 (Exhibit "C"); Plaintiff Nathanial Watts 50-h Hearing (March 4, 2021, Exhibit "D"); Picture of Bullet Accidentally Discharged from Kevin Blackett's Personal Protection Firearm, Bate Stamp DEF0211 (Exhibit "E"); Photo of Shell Casing Accidentally Discharged from Kevin Blackett's Personal Protection Firearm, Bate Stamp DEF0219 (Exhibit "F"); PO Yardan BWC Footage Bate Stamp DEF024 (Exhibit "G"); PO Link BWC Footage Bate Stamp DEF0209 (Exhibit "H"); Lieutenant ("Lt.") Hussain BWC Footage Bate Stamp DEF0208 (Exhibit "I"); PO Yardan BWC Footage Bate Stamp DEF025 (Exhibit "J"); PO Yardan BWC Footage Bate Stamp DEF022 (Exhibit "K"); Deposition of Plaintiff Nathanial Watts (April 19, 2024, Exhibit "L"); Picture Clothing Pile in Basement (Exhibit "M"); and Picture of Toilet in Basement (Exhibit "N").

possession of the pistol. The pistol accidentally discharged during the struggle. Plaintiff was not struck by the bullet, but had some gunpowder residue in his eye.

**Events Inside 9101 Avenue N, Brooklyn, New York:**

Kevin Blackett is the owner of a two-family home located at 9101 Avenue N, Brooklyn, New York, Kings County ("9101 Avenue N"). Blackett purchased this property with his father in 2006. When Blackett's father passed away in 2012, Blackett became the sole owner of the property. (Exhibit "A" ¶ 1).

There are two apartments inside 9101 Avenue N that Blackett rents out. The one is located on the  first floor when you enter the door, and the other is located on the second floor up two short flights of stairs. The basement apartment was not rented to anyone and is completely off-limits to all tenants. Blackett has used the basement apartment for storage since he moved out of the home in 2016. (Exhibit "A" ¶ 5).

Both tenants of the apartments Blackett rents to are month-to-month tenants. Ms. Caroletta Andries is the upstairs tenant and has resided at 9101 Avenue N since 2011. She had a year-to-year lease until 2016 and has been a month-to-month tenant since 2016. Ms. Andries has two children. Her son, Shaquille Erskine ("Erskine"), is a friend of the Plaintiff. The first-floor tenant has resided at 9101 Avenue N since 2016; she had a one-year lease, and has been a month-to-month tenant since 2017. The first-floor tenant has no involvement in this case. (Exhibit "A" ¶ 6).

On November 19, 2019, at approximately 6:15 P.M., Blackett arrived at 9101 Avenue N, with his then fiancé, now wife, Shanee Roberts-Blackett ("Shanee"), to retrieve some of their property stored in the basement of the house. The two walked down three steps and entered the locked basement apartment door. There is a small area immediately in front of the basement apartment door where the heat/gas boiler for the house is placed. There was no light on in this area

3

at this time. (Exhibit "A" ¶ 4 & 7; Exhibit "C").

As Shanee and Blackett entered the basement apartment, Blackett shut and locked the door behind them. Blackett could clearly smell the residue of marijuana smoke. Blackett observed personal property that he had stored in the basement apartment was disturbed and the apartment was in disarray. Blackett also noticed that the area near the bathroom had human feces on the floor and the toilet had  bacteria growing inside it. (Exhibit "A" ¶ 8, Exhibit "M", Exhibit "N").

Shanee went to the back of the room of the basement apartment, turned on a light, and opened a window, while Blackett stayed in the room nearest the apartment door. Blackett put a light on and opened a window. Neither Blackett nor Shanee exited the basement apartment during this time. (Exhibit "A" ¶ 8).

Blackett was in the basement for approximately 10-15 minutes when he heard someone outside the door of the basement apartment trying to enter without any knock or verbal communication. (Exhibit "A" ¶ 9).

Blackett, a New York City Department of Corrections ("DOC") Correction Officer ("CO") since 2011, had a Personal Protection Firearm ("PPF"), which was a Glock 9mm pistol. Blackett has a permit to "carry" this pistol when off duty. (Exhibit "A" ¶ 10).

Blackett, in fear of his safety and also Shanee's safety, un-holstered his PPF and went towards the locked door of the basement apartment, which was now being pushed open. Blackett extended his arms holding his PPF with both hands as the door opened, yelling that he was an "Officer." When the apartment door opened, Blackett saw a male dressed in all black, a little taller than himself, standing at approximately 6 feet 2 inches tall (Exhibit "A" ¶ 10).

While Blackett had his arms extended and both of his hands on his PPF, Plaintiff grabbed Blackett's PPF. Plaintiff then attempted to disarm Blackett. Plaintiff grabbed Blackett's right hand

4

and wrist, the two began to struggle for Blackett's PPF. During the struggle, Blackett's PPF accidentally discharged one shot in the direction of Plaintiff. Plaintiff then went to the floor. (Exhibit "A" ¶ 11).

Plaintiff fell to the floor following the accidental discharge of Blackett's PPF, but immediately began yelling at Blackett and moving around on the floor. A few moments later, Mr. Erskine, the second-floor tenant's son, came downstairs yelling something to the extent of, "What happened!? What happened!?" At this time, Blackett called out to Shanee, who was still in the apartment and behind him, to call 911. (Exhibit "A" ¶ 11). The accidental discharge of Blackett's PPF lead to gun powder residue around Plaintiff's right eye. (Exhibit "D" p. 31, L 20-25; Exhibit "L", p. 104, L 7 - p. 105, L 4).

Blackett told Mr. Erskine to go back upstairs to the front door stairway landing. He then grabbed Plaintiff by the back of his jacket and walked him upstairs as well. Blackett's intent was to go back upstairs where there was light. Plaintiff continued to yell that he had been shot. (Exhibit "A" ¶ 11).

Shanee called 911 and Blackett heard her tell the 911 Operator all relevant information about to the incident, including that Blackett was a member of the service. She also provided the 911 Operator with a full description of Blackett's clothing and physical appearance, as well as a description of Plaintiff and his clothing. At no point in time did Shanee state that Blackett should shoot Plaintiff. (Exhibit "A" ¶ 12).

Once Blackett, Plaintiff, and Mr. Erskine got to the staircase landing area, Blackett told both Mr. Erskine and Plaintiff to sit on the staircase. Blackett's PPF was still in his hand, he kept it out since he was with two adult males standing in front of him, one of which was just involved in a physical altercation with Blackett. (Exhibit "A" ¶ 13).

5

Blackett and Shanee stepped out of the hallway area and stood outside the front door to wait for the NYPD to arrive. Mr. Erskine and Plaintiff remained on the staircase. Blackett's PPF remained in his hand. Blackett's PPF was not being pointed at either Plaintiff or Mr. Erskine. (Exhibit "A" ¶ 14).

NYPD responded to the 911 call made by Shanee. On PO Morris's Body Worn Camera ("BWC") footage from the date of the incident, at time stamp 18:36:42, the responding officers first arrive at 9101 Avenue N at approximately 6:36 P.M. The BWC footage shows the responding Police Officers yelling at Blackett from outside the gate of the house to put his gun down on the ground multiple times. Blackett complies and the responding officers then enter the front yard of the house. (Exhibit "B" PO Morris BWC Footage at 18:36:42 to 18:36:48 Bate Stamp DEF0210). One of the officers handcuffed one of Blackett's hands, but upon Blackett producing his identification, the handcuffs were removed. (Exhibit "A" ¶ 15). Plaintiff testified that this was the first time he became aware of the fact that Blackett is a Correction Officer. At no point before this moment was Plaintiff aware that Blackett was a law enforcement officer (*see,* Exhibit D, p. 23, L 11 – p. 24, L 11; Exhibit L, p. 31, L 14-19; p. 116, L 24 – p. 117, L 7).

On PO Yardan's BWC footage from the date of the incident, at time stamp 18:37:28, Blackett begins to give his initial explanation of what transpired. Blackett explains to PO Yardan that 9101 Avenue N is his property. He further tells PO Yardan that he learned that the basement apartment of 9101 Avenue N had been used to smoke marijuana. Blackett proceeds to tell PO Yardan that the basement apartment is locked, only to be utilized by himself and that he is the only one who has access to the basement apartment. Blackett further states to PO Yardan that Mr. Erskine invites his friends over to go downstairs to the basement apartment to smoke, or drink, and other activities of the sort, breaking through the door and entering private property. Blackett

6

then informed PO Yardan that he came to the basement apartment to retrieve some of his belongings, closing the door behind him. Blackett goes on to state that a few minutes after Blackett got into the basement apartment, Plaintiff came through the basement apartment door. Blackett states to PO Yardan that his PPF was in his hand at that point and once Plaintiff entered through the door, Plaintiff began reaching for Blackett's PPF, causing an accidental discharge. Once PO Yardan heard about the accidental discharge of Blackett's PPF, PO Yardan instructs one of the other responding officers to call in their supervisor to the scene. PO Yardan further begins to explain how this matter will now be processed and investigated given that there was a discharge by a member of service. PO Yardan also advises Blackett to contact his union delegate (Exhibit "G" PO Yardan BWC Footage at 18:37:28 to 18:39:25 Bate Stamp DEF024).

On PO Morris's BWC footage from the date of the incident, at time stamp 18:43:56, an officer can be heard asking Mr. Erskine, "You guys usually go down [to the basement] and smoke?" To which Erskine replies, "Yeah. It be too cold outside so we usually go [to the basement] to smoke." (Exhibit "B" PO Morris BWC Footage at 18:43:56 to 18:44:02 Bate Stamp DEF0210).

On PO Yardan's BWC footage from the date of the incident, at time stamp 18:41:10, PO Yardan tells Plaintiff, "If you'd like, we'll get you to a hospital." At time stamp 18:41:14, Blackett's wife, Shanee, can be seen going down to the basement apartment to get her coat, and coming back upstairs at approximately time stamp 18:42:00. At time stamp 18:41:20, another officer can be heard asking, "Do you need an ambulance? Does anyone need an ambulance?" At time stamp 18:45:52, an officer can again be heard asking Plaintiff, "Do you want us to call an ambulance for you?" Plaintiff refused medical attention three times. (Exhibit "G" PO Yardan BWC Footage at 18:41:10 to 18:45:55 Bate Stamp DEF024).

On PO Morris's BWC footage from the date of the incident, at time stamp 18:50:18,

Plaintiff is frisked Plaintiff outside of the house. Blackett is not present during this frisk as he is downstairs in the basement apartment with Lt. Hussain. Blackett returns back outside at time stamp 18:53:19. Lt. Hussain comes back outside shortly after Blackett. (Exhibit "B" PO Morris BWC Footage at 18:50:18 to 18:53:30 Bate Stamp DEF0210).

Lt. Hussain arrived at 9101 Avenue N at 18:46 and instructs PO Gourlay at time stamp 18:49:46 to go down to the basement apartment and secure the scene. On Lt. Hussain's BWC footage from the time of the incident, at time stamp 18:49:58, Lt. Hussain asks Mr. Erskine, Mr. Erskine's mother, and Plaintiff whether they have identification on them, to which Plaintiff replies "You know me," at time stamp 18:50:00. (Exhibit "I" Lt. Hussain BWC Footage at 18:49:46 to 18:50:00 Bate Stamp DEF0208).

On Lt. Hussain's BWC footage from the time of the incident, at time stamp 18:52:00, Blackett is standing by the entry to the basement door explaining to Lt. Hussain what happened. Lt. Hussain then tells Blackett to wait outside the house at time stamp 18:53:15. At time stamp 18:54:22, Lt. Hussain tells Mr. Erskine and Plaintiff, "You guys got to hang out here. You guys are not free to go." (Exhibit "I" Lt. Hussain BWC Footage at 18:52:00 to 18:54:25 Bate Stamp DEF0208).

On PO Link's BWC footage from the date of the incident, at time stamp 18:53:19, while downstairs by the heater, you can see an officer pointing towards the floor behind the heater to show where the silver shell casing lays. (Exhibit "H" PO Link BWC Footage at 18:53:19 to 18:53:25 Bate Stamp DEF0209).

On PO Link's BWC footage from the date of the incident, at time stamp 19:14:15, Lieutenant Hussain can be seen and heard speaking to Mr. Erskine's mother (and sister) asking/confirming, "[Plaintiff and Mr. Erskine] does not have permission to obviously go

downstairs?" To which Mr. Erskine's mother responds, "No, he don't." (Exhibit "H" PO Link BWC Footage at 19:14:15 to 19:14:18 Bate Stamp DEF0209).

Lt. Hussain's requested Blackett to come downstairs to the basement at time stamp 18:52:00. Blackett then explained to Lt. Hussain what had transpired and gave Lt. Hussain a description of Plaintiff at the time of the incident. Blackett made this statement freely and voluntarily to Lt. Hussain. PO Yardan was also present during this interaction and was also there when the responding Officers and Lt. Hussain identified the discharged round and shell casing. (PO Yardan BWC Footage at 18:51:50 to 18:53:23 Bate Stamp DEF025). The discharged round and the shell casing were recovered by the Evidence Collection Unit ("ECU"). (Exhibit "A" ¶ 20; Exhibit "E"; and Exhibit "F").

After Blackett made his statement to Lt. Hussain, Blackett was escorted back upstairs by NYPD officers. He continued to wait by the side of his house. Blackett remained at the side of the house until the NYPD ECU arrived. Blackett then entered the basement with the ECU Officers, and identified where his pistol was accidentally discharged. Both the bullet and shell casing were recovered. Once back upstairs, Blackett was instructed by an NYPD Officer to drive his personal vehicle to the 69th Precinct. (Exhibit "A" ¶ 20).

While Plaintiff was at the scene, he refused medical attention three (3) times when Officers tried to assist him. On PO Yardan's BWC, at time stamp 19:01:05, Plaintiff asks if he can wash his eye out, to which PO Yardan asks Mr. Erskine's mother if she can bring some water for Plaintiff to wash his eye out. Mr. Erskine's mother brings out a bowl of water with a paper towel and Plaintiff dips the paper towel into the bowl to clean his right eye. (Exhibit "K" PO Yardan BWC Footage at 19:01:05 to 19:04:28 Bate Stamp DEF022).

On Officer Morris's BWC footage from the date of the incident, at time stamp 19:13:03,

Lt. Hussain instructs the responding officers to handcuff and arrest Plaintiff. (Exhibit "B" PO Morris BWC Footage at 19:13:03 to 19:16:25 Bate Stamp DEF0210).

At the 69th Precinct, Blackett was placed in an office; Blackett's union delegate met him at the Precinct. Blackett was interviewed by the NYPD IAB, additionally a Department of Correction Investigator who had arrived at the 69th Precinct and took possession of Blackett's PPF from an NYPD Officer. Eventually, an Officer took Blackett's statement concerning his ownership of 9101 Avenue N. (Exhibit "A" ¶ 21). Blackett had no role in making any decision whether Plaintiff should be arrested. He was a crime victim. (Exhibit "A" ¶ 22).

Blackett had no role in determining what charges under the New York State Penal Law Plaintiff should be arrested for. After Plaintiff left 9101 Avenue N in NYPD custody and was transported to the 69th Precinct, Blackett never saw Plaintiff again. (Exhibit "A" ¶ 23). Blackett did not fill out or file any other paperwork associated with Plaintiff's arrest. (Exhibit "A" ¶ 24). Blackett never handcuffed or placed Plaintiff under arrest or placed him in any custodial confinement. (Exhibit "L" p. 107 L. 18 to L. 25). When Plaintiff was on the stairway, Blackett was ensuring he did not attempt to leave before the responding Police Officers arrived at 9101 Avenue N. Blackett held Plaintiff and Mr. Erskine in the stairway for his own protection. Any criminal charges that were subsequently lodged against Plaintiff were not Blackett's determination. (Exhibit "A" ¶ 25).

Blackett did sign a corroborating affidavit that stated he did not give Plaintiff permission or authority to be at or in his home at 9101 Avenue N on November 19, 2019. (Exhibit "A" ¶ 26). Blackett never went to Court concerning the criminal court complaint that the Kings County District Attorney ("KCDA") filed against Plaintiff. (Exhibit "A" ¶ 27).

After spending approximately 30 minutes at the Precinct in a holding cell, Plaintiff was

taken to the hospital by ambulance. This was the first time Plaintiff requested medical attention. (Exhibit "L" p. 41 L. 16 to L. 24).

Plaintiff was taken to Brookdale Hospital by EMS, escorted by NYPD Officers (*see,* Exhibit "L" p. 52 L. 15 to L. 16). A doctor performed a procedure on Plaintiff's right eye to remove the gun powder residue fragments. The doctor used a tweezer and Plaintiff was not placed in an operation room or given any anesthesia to complete this procedure. After the procedure, the doctor gauzed Plaintiff's eye, taped it, and gave him eye drops in case the eye got irritated. Plaintiff was discharged back into NYPD custody and given Tylenol. This was the full extent of Plaintiff's medical treatment from the gun powder residue that went into his eye after he grabbed Blackett's pistol. (Exhibit "L" p. 54 L. 5 to L. 24). Following the procedure, Plaintiff was placed back into handcuffs and taken to Central Bookings. (Exhibit "L" p. 60 L. 2 to L. 3). Plaintiff waited a couple of hours before he was arraigned in criminal court on trespassing charges. (Exhibit "L" p. 61 L. 7 to L. 18). After his arraignment, Plaintiff was released on his own recognizance. (Exhibit "L" p. 61 – p. 62 L. 24 to L. 1). The outcome of the criminal court complaint was that Plaintiff accepted an adjournment in contemplation of dismissal ("ACD") in March 2020. (Exhibit "L" p. 62 L. 14 to L. 16). Blackett was never consulted, in March 2020, by any member of the KCDA's office before they offered Plaintiff an ACD to close out the three (3) Misdemeanor Trespass charges that were in the Criminal Court complaint. (Exhibit "A" ¶ 28).

Blackett was never disciplined by the DOC for the events surrounding November 19, 2019. Blackett's PPF was held by DOC until 2023 when the DOC investigation was closed, and Blackett was found to have acted in accordance with the Rules and Regulations of the DOC. (Exhibit "A" ¶ 30).

## PROCEDURAL HISTORY

Plaintiff Watt filed his original Complaint on November 8, 2022 (*see*, ECF Dkt. 1). Defendant Blackett was served with the original Complaint on or about January 31, 2023 (*see*, ECF Dkt. 7). Defendant Blackett interposed his Answer and filed his Cross-Claims against the City of New York and his Counterclaims against Plaintiff Watt for assault, battery, and trespass (*see*, ECF Dkt. 17).

Defendant Blackett requested a Pre-Motion Conference before the Court and in accordance with the Court's rules, filed in Local Rule 56.1 Statement of Fact, as Exhibit "A" on September 11, 2024 (*see*, ECF Dkt. 58).

Plaintiff Watt filed his First Amended Complaint ("FAC") on or about September 15, 2024 (*see*, ECF Dkt. 62). Defendant Blackett then interposed his Answer to the FAC and Counterclaims against Plaintiff on or about October 21, 2024 (*see*, ECF Dkt. 68).

Plaintiff's claims in his FAC as against Defendant Blackett are made under both state and federal law, and were the same as in his original Complaint.[2]

The deposition of Plaintiff Watt was conducted on or about April 19, 2024 (Exhibit "L"). Plaintiff waived all depositions of Defendants. Please see the Declaration of Defendant Kevin Blackett for his sworn testimony in support of his motion for summary judgment (*see*, Burns Declaration, Exhibit "A"). In addition to other admissible evidence to support Blackett's herein motion for summary judgment, and set forth in the Local Rule 56.1 Statement of Facts, and evidence relied upon in the Burns Declaration.

---

[2] Plaintiff's FAC is not well pled and fails to state what, if any, specific acts can be attributed to the named defendants. Reviewing the FAC as it applies to defendant Blackett, Plaintiff's claims can be distilled to: false arrest; false imprisonment; malicious prosecution; excessive force; and conspiracy. These claims sound under both federal law 42 U.S.C. § 1983, pursuant to the Fourth and Fourteenth Amendment violations and state law. The conspiracy claim seems to be based upon some type of unlawful or unreasonable seizure of Plaintiff Watt based upon his race, which is overwhelmingly not supported by the undisputed facts of this case.

## STANDARD OF REVIEW

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also, Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When a motion of summary judgment is properly supported by documentary and testimonial evidence, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather, must present significant probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986*); Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991), cert denied, 502 U.S. 849 (1991); *see also, Suburban Propane v. Proctor Gas, Inc*., 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable" or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *Id*. at 247-48.

To present a "genuine" issue of material fact, there must be contradictory evidence "such

13

that a reasonable jury could return a verdict for the non-moving party." *Id*. at 248. If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id*. at 322-23; accord *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he could point to an absence of evidence to support an essential element of nonmoving party's claim).

Here, as set forth below, the court should grant summary judgment because there is no genuine issue of material fact to support Plaintiff's federal claims against Defendant Blackett.

## **ARGUMENT**

## **POINT I**

## **BLACKETT WAS NOT ACTING UNDER THE COLOR OF LAW. ALL OF PLAINTIFF'S CONSTITUTIONAL AND FEDERAL LAW CLAIMS AGAINST BLACKETT MUST BE DISMISSED.**

I.     Defendant Blackett was not acting under the color of law.

42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constriction and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983, by its own terms, does not create any substantive rights; it provides only remedies for deprivation of rights established elsewhere in the Constitution or under federal law.

14

*See, Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).  In order to establish a cognizable section 1983 claim, a plaintiff must demonstrate (1) a violation of a right secured by the Constitution and laws of the United States, and (2) that the alleged deprivation was committed by a person acting under color of state law.  *See,* 42 U.S.C. section 1983; *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

An individual acts under the color of law when he or she exercises power "made possible only because [he or she] is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). See also *Evans v. U.S.*, 504 U.S. 255, 274 (1992); *Screws v. United States*, 325 U.S. 91, 107-113 (1944). "Color of law and pretense of law are synonymous, and acts of officers engaged in 'personal pursuits' are not included*." United States v. Temple*, 447 F.3d 130, 138 (2d Cir. 2006); *see Screws,* 325 U.S. at 111. As aptly stated by the Third Circuit in *Barna v. City of Perth Amboy*, "a police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law." 42 F.3d 809, 816 (3d Cir. 1994).

Where the defendant is a private entity, the plaintiff must show that there is "such a close nexus between the State and the challenged action" that seemingly private behavior "may be fairly treated as that of the State itself*." Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). "Communications between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor." *Fiske v. Letterman*, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005).  *See also, Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) ("[M]ere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §1983."). Plaintiff has not made that showing here.

In the context of off-duty police officers, "it is now axiomatic that 'under "color" of law

15

means under "pretense" of law' and that 'acts of officers in the ambit of their personal pursuits are plainly excluded*." Pitchell v. Callan*, 13 F.3d 545, 547-48 (2d Cir. 1994) (quoting *Screws*, 325 U.S. at 111). While there is "no bright line test for distinguishing 'personal pursuits' from activities taken under color of law," in general "[c]ourts look to the nature of the officer's act, not simply his duty status." *Id*. at 548. The relevant question is whether the officer, "albeit off-duty, nonetheless invokes the real or apparent power of the police department" or "performs duties prescribed generally for police officers." *Id*. at 548.

When assessing whether an off-duty police officer is acting under color of the law, courts look to the totality of the circumstances. The factors that they consider are: (1) whether the officer identified himself during the incident as a police officer; (2) if plaintiff was aware that defendant was a police officer; (3) whether the defendant off-duty officer detained/questioned the plaintiff in the scope of their job as a police officer; and (4) whether defendants engaged in any investigation aspect of the public safety functions of police work. *Claudio v. Sawyer*, 675 F. Supp. 2d 403 (S.D.N.Y. 2009) (quoting *Wahhab v. City of New York*, 386 F. Supp. 2d 277, 278 (2005)). Courts also consider whether the officer was in uniform; was authorized to make an arrest at the time; was carrying handcuffs; was carrying any weapons; flashed a police badge; and placed the plaintiff under arrest or otherwise detained him. *Cotz v. Mastoreni*, 476 F. Supp. 2d 332, 372 (S.D.N.Y. 2007) (citations omitted).

In many of the cases that the off-duty officer was found to be acting under color of the law, it was due in part to the fact that the officer identified themselves before taking action. *See, Jocks v. Tavernier*, 316 F.3d 134 (2d Cir. 2008). Conversely, the district courts have found that an off-duty officer was not acting under the color of law during an altercation because he did not identify himself as an officer until the police responded, much like in the present case.  In *Stoeckley v. City*

*of New York*, 700 F. Supp. 2d 489, 493 (S.D.N.Y. 2010), the District Court stated, "[t]here is no allegation that Velasquez was in uniform, that he was on duty, or that he exhibited a badge or identified himself as a police officer during the entire course of the incident. To the contrary, the complaint suggests strongly that the first [time] plaintiff learned that Velasquez was a police officer was after the incident had concluded and the officers who responded to the 911 call came out of the grocery store." "Whether [a police officer] did or did not so identify himself has no bearing on his status as acting within the scope of his duty." *Hearst v. City of New York*, 2012 LEXIS 41125 (E.D.N.Y. 2012) (quoting *Nisbett v. State of New York*, 31 Misc. 3d 32, 222 (1961)). The undisputed fact that Blackett did not identify himself until after the altercation only detracts from plaintiff's bald assertion that Blackett was acting under color of law.

Nowhere in either Plaintiff's FAC or in any of his transcribed testimony did he say he was aware that Blackett was a law enforcement officer until he saw Blackett identify himself to the NYPD responding officers.

Here, while the Plaintiff makes the bald assertion that defendant Blackett was "acting under color of state law," he sets forth no genuine material facts to render this assertion as either plausible or cognizable. (Sec. FAC ¶¶ 9-10). In fact, these assertions are flatly contradicted by the factual allegations set forth by the Plaintiff. The incident described by Plaintiff in his First Amended Complaint and in his deposition is clearly an incident among private citizens. It is abundantly clear from Plaintiff's own narrative that this incident has no relation to Blackett' employment as a New York City Correction Officer. The Plaintiff himself states that he was not even aware that Defendant Blackett was a law enforcement officer until Plaintiff observed and heard Blackett identify himself to a responding officer, after the alleged incident. At no time before the incident did Plaintiff know, or even have a suspicion, that Blackett was a Correction Officer. (*see*, Exhibit

17

"D", p. 23, L 11 – p. 24. L 11; Exhibit "L", p. 31, L 14-19; p. 116, L 24 – p. 117, L 7).

Plaintiff stated that his initial encounter with Blackett was simple and brief. Blackett did not display handcuffs to Plaintiff, nor display his Correction Officer Shield to Plaintiff, nor did he place Plaintiff under arrest. Blackett was not wearing his Correction Officer uniform. When he displayed his Glock 9mm pistol, he did so in defense of himself and his wife, believing they were about to be the victims of a home invasion. The fact that Blackett stated he said "Officer" before the basement apartment door opened does not assist Plaintiff in his claim that Blackett was acting under the color of law as Plaintiff never heard him say it. Plaintiff did grab Blackett's Glock 9mm pistol and in this struggle for the pistol's possession, the weapon accidentally discharged. Moreover, Blackett admits that he did have handcuffs on his person, but he never used or displayed them to Plaintiff or anyone else during the incident. We know that Defendant Blackett went to his rental property to check on the basement apartment. Blackett's involvement was not in the course of, or colored by, his occupation as a New York City Correction Officer. If the Court was to fully credit Plaintiff's version of the incident there is no evidence to support his contention that Blackett was acting under color of law.

Moreover, Blackett is even further removed from liability because he was not even the party who called the police. It was his wife who called 911 to report the incident. She gave a full description of Blackett to prevent any confusion in the minds of the responding officers that the black male dressed in civilian clothes was a New York City Correction Officer. This did not prevent the responding NYPD officers from initially treating Blackett as a potential criminal until he identified himself, for the first time, as a law enforcement officer. Even if Blackett provided information to the police, his mere "furnishing of information to the police officers does not constitute joint action under color of state law which renders private citizen liable under § 1983."

18

*See, Benavidez*, 722 F.2d at 618.

Blackett was not the arresting officer of Plaintiff Watt. Lt. Hussain was the person to determine Plaintiff Watt should face arrest and subsequent criminal charges. Blackett, upon arriving at the 69th Precinct, made a voluntary statement to NYPD Internal Affairs Division ("IAD") and to a DOC Investigator concerning the events inside 9101 Avenue N. He explained how his Glock 9mm pistol accidentally discharged as Plaintiff attempted to take possession of it.

NYPD interviewed Blackett, after the IAD and DOC interviews, as a crime victim. He had absolutely no role in the decision to arrest Plaintiff, or to determine what charges would be made under the Penal Law. He never filed any arrest paperwork, placed Plaintiff in handcuffs, nor placed him in any custodial confinement. Blackett only signed a corroborating affidavit confirming his statement in the criminal complaint that he did not give Plaintiff the permission or authority to be in his home at 9101 Avenue N on November 19, 2019.

Blackett fully cooperated with all inquiries from NYPD and DOC. Blackett was never disciplined by his employer, the DOC. He was viewed by the DOC as a victim of a crime that occurred off-duty. His Glock 9mm pistol was returned to him in 2023 by DOC when the administrative internal investigation was officially closed out. Accordingly, to the extent Plaintiff is asserting any claim against Blackett under 42 U.S.C. § 1983, judgment must be granted dismissing any such claims.

## POINT II

## AS THE DISCHARGE OF BLACKETT'S WEAPON WAS NOT AN INTENTIONAL ACT, PLAINTIFF § 1983 CLAIMS MUST FAIL.

"The Due Process Clause of the Fourteenth Amendment provides: '[Nor] shall any State deprive any person of life, liberty, or property without due process of law' Historically, this guarantee of due process has been applied to deliberate decision of government officials to deprive

19

a person of life, liberty, or property" *Daniels v. Williams*, 474 U.S. 327, 331 (1985). Accidents or negligent acts have been explicitly rejected as a basis for liability under the Fourteenth Amendment. *Id.*

"It makes little sense to apply a standard of reasonableness to an accident, if such a standard were applied, it could result in Fourth Amendment violations based upon simple negligence. The Fourth Amendment, however, only protects individuals against 'unreasonable' seizures, and not seizures conducted in a 'negligent manner'" *Dodd v. Norwich*, 827 F. 2d 1, 8 (2nd Cir. 1987). In *Dodd*, the Second Circuit found that an accidental shooting, by a police officer, during an attempt to apprehended a burglar to disarm an arresting officer was not a violation of the Fourth or Fourteenth Amendments of the U.S. Constitution, but a pure accident.

Blackett has consistently stated that when the door to the basement apartment opened and he emerged with arms extended with a Glock 9mm in his hand, Plaintiff grabbed his arm and a struggle lasting a few seconds ensued. Blackett's pistol discharged accidentally. He did not pull the trigger. Plaintiff has attempted to tailor his testimony to minimize his attempt to take possession of the pistol from Blackett, and to falsely claim that Blackett discharged the pistol intentionally.

For the reasons stated immediately above, Plaintiff's federal claims must be dismissed as Blackett was not acting under the color of law. Plaintiff's claims as to use of excessive force are also false and baseless as there is no evidence that Blackett's Glock 9mm pistol was discharged intentionally. By amazing luck, Plaintiff was only struck by some small pieces of gun powder residue in his eye.

Plaintiff's treatment for what can only be described as a *de minimis* injury, was wiping out his eye at the scene with water and a paper towel. He was offered medical treatment three times at the scene, but refused it each time. Only after he was arrested and taken to the 69th Precinct did he

20

go to the hospital. At the hospital he received minimal treatment. A doctor plucked out six or seven tiny pieces of gun powder residue from his eye with tweezers. The doctor gave Plaintiff Tylenol, eye drops, and taped gauze to Plaintiff's eye. Plaintiff received no additional formal medical treatment for this very minor injury. He went with his grandmother to a doctor she knew at a clinic in March of 2020. There were no documented follow-up examinations or any medical visits or medication prescribed. Plaintiff never sought any psychological counseling or visited any psychologist in relation to these events (*see*, Exhibit "L", p. 111, L 14-18).

Plaintiff has failed to show the injuries from the alleged excessive force claims were the result of an intentional act and that his injuries were more than *de minimis* in nature.

## POINT III

### THERE ARE NO GENUINE, MATERIAL FACTS TO SUPPORT PLAINTIFF'S CLAIM THAT DEFENDANT BLACKETT CONSPIRED TO DEPRIVE PLAINTIFF OF HIS CONSTITUTIONAL RIGHTS.

While it is clear that Defendant Blackett was not acting under the color of law, Plaintiff also makes the false and baseless assertions that Blackett along with defendants NYPD Police Officer Gourlay and Redhead conspired to violate his constitutional rights in violation of 42 U.S.C. § 1983 (*see,* FAC, ¶¶77-78).

To prevail on a conspiracy claim under § 1983, the plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal, causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "[W]here a plaintiff fails to produce any specific facts whatsoever to support a conspiracy allegation, a district court may ... grant summary judgment." *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 251 (2d Cir. 1985) (quoting *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981),

*superseded on other grounds by* Fed. R. Civ. P. 5. *See also Barnes v. Harling*, 368 F.Supp.3d 573 (W.D.N.Y 2019.

Plaintiff sets forth no genuine material facts to state a viable conspiracy claim against Blackett under § 1983. In his FAC Plaintiff makes the bald assertion that Defendants agreed to violate his rights and conspired together to racially profile him, cover up their false arrest, and that Defendants fabricated a version of events that would justify their false arrest to initiate criminal proceedings (FAC ¶¶ 77-78).

Accordingly, to the extent Plaintiff is asserting any claim against Blackett under § 1983, judgment must be granted dismissing such claims.

While "such conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct evidence," Plaintiff does not even proffer circumstantial evidence to create any factual issues on this claim. *Pangburn*, 200 F.3d at 72. Nowhere in the Complaint or his deposition does Plaintiff describe actions taken by Defendant Blackett that would lead a rational person to believe that he "conspired with" the arresting officers. Plaintiff does not mention any conversations had between the arresting officers and Defendant Blackett (or any other specific facts) that present a plausible claim for conspiracy. Moreover, "[t]he mere fact that the individual defendants were all present at the time of the alleged constitutional violation is insufficient to support a conspiracy claim." *Gustafson v. Village of Fairport*, 106 F.Supp.3d 340, 352 (W.D.N.Y. 2015).

Plaintiff's theory may simply be that because Blackett was an off-duty law enforcement officer, there must be some conspiracy between him and the on-duty actors. That is insufficient to create a triable issue of fact. The pleadings and the evidence in this case do not present any facts tending to show agreement and concerted action between Defendant Blackett and the New York

22

City Police Department. Blackett clearly did not have any involvement in determining whether or not to criminally charge the Plaintiff.

It is undisputed that Lt. Hussain, who is not a defendant in this matter, made the decision to arrest Plaintiff (*see*, Exhibit L, p. 41, L 9-25; Exhibit I; Rule 56.1 Statement ¶¶26 and 34). The three misdemeanor trespassing charges were not determined by Blackett, but by NYPD.

The record is clear and reflects that Defendant Blackett had no involvement with any part of Plaintiff's arrest, except providing the information to the responding NYPD officer as a crime victim. Blackett did not conduct any part of the investigation, nor did he process Plaintiff's arrest. Blackett simply complied with the investigation concerning the accidental discharge of his Glock 9mm pistol and the investigation into the potential criminal conduct by Plaintiff (*see*, *Cooper v. City of New York, et al.*, 2024 U.S. App. Lexis 6116 (2nd Cir. 2024).

The fact that Blackett was not acting "under the color of law" and not part of any conspiracy is corroborated by Plaintiff's own sworn testimony; the BWC's of the co-Defendants and other responding officers and supervisors.

Plaintiff has not be able to show that there was any conspiracy to illegally charge him with violations of the Penal Law, or to racially profile him. Blackett, as part of his voluntary cooperation, simply provided information that formed the basis of probable cause that lead to Plaintiff's arrest. Plaintiff is seen and heard in the BWC video stating that the events here were a "miscommunication" (*see*, Exhibit A, ¶ 16), he never denies he was not present inside 9101 Avenue N, in fact he admits it.

As stated elsewhere in this Memorandum of Law, in the 56.1 Statement, and in Blackett's Declaration he was never acting under the color of law at any time during the events on November 19, 2019. At no point did Blackett conspire with members of the NYPD to falsely arrest,

maliciously prosecute, or violate Plaintiff's constitutional or civil rights pursuant to 42 U.S.C. § 1983 including to "racially profile him." The evidence here clearly demonstrates that Plaintiff assaulted and battered Blackett and trespassed on his property. Blackett's Glock 9mm pistol was accidentally discharged when Plaintiff attempted to take possession of it from Blackett, and Blackett never intentionally aimed his pistol at Plaintiff. The BWC video speaks for itself and corroborates the completely uncontroverted evidence in this case.

In sum, in the absence of any evidence of agreement, summary judgment on a § 1983 conspiracy claim is warranted. *Ostensen v. Suffolk County*, 236 Fed.Appx. 651, 653 (2d Cir. 2007). Plaintiff's allegation that Blackett, and other named Defendant NYPD Police Officers, reached an agreement amongst themselves is not only not supported in the record, but is clearly an allegation grounded merely on a baseless hunch. To overcome a motion for summary judgment, Plaintiff "must come forward with 'concrete evidence from which a reasonable juror could return a verdict in his favor.'" *Houston v. Zen Zen*, 388 F.Supp.2d 172, 175 (W.D.N.Y. 2005). Plaintiff is clearly unable to meet that burden here.

## POINT IV

## THE COURT SHOULD DECLINE TO EXERCISE PENDENT JURISDICTION OVER THE REMAINING STATE LAW CLAIMS.

Should the Court dismiss Plaintiff's federal claims, Blackett is respectfully requesting the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims for assault and battery regarding the November 19, 2019 incident.

It is axiomatic that a Court should decline to exercise jurisdiction over State law claims when it dismisses the Federal claims prior to trial. *See Pitchell*, 13 F.3d at 549, *citing Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Accordingly, should the federal claim be

24

dismissed, the matter should be remanded to New York State Supreme Court for further proceedings.

<u>**CONCLUSION**</u>

For all the foregoing reasons, Defendant Blackett's motion for summary judgment pursuant to Fed. R. Civ. P. 56, dismissing Plaintiff's federal claims against Blackett in their entirety, should be granted, and for such other, further and different relief as this Court deems just and proper.

Dated: New York, New York
　　　　June 6, 2025

Respectfully submitted,

KARASYK & MOSCHELLA, LLP

*John W. Burns*
John W. Burns, Esq.
*Of Counsel*
*Attorneys for Defendant Kevin Blackett*
233 Broadway, Suite 2340
New York, New York 10279
212-233-3800
jburns@kmattorneys.com

25